BORDA et al., Appellees,

v.

SANDUSKY LIMITED, Appellant.

[Cite as Borda v. Sandusky Ltd., 166 Ohio App.3d 318, 2006-Ohio-2112.]

Court of Appeals of Ohio,
Sixth District, Erie County.

No. E–05–020.

Decided April 28, 2006.

Charles W. Murray and W. Patrick Murray, for appellees.

Mark D. Katz and Elizabeth S. Rudnick, for appellant.

Skow, Judge.

{¶ 1} Appellant, Sandusky Limited, appeals from a judgment entered by the Erie County Court of Common Pleas in favor of appellees, Barbara Borda and Janet Fritz. For the reasons that follow, we affirm the judgment of the trial court.

{¶ 2} Appellees Borda and Fritz were employed as production supervisors in appellant's vinyl-production plant, located in Sandusky, Ohio. The plant, which

manufactures vinyl primarily for automotive applications, had approximately 300 employees and was divided into several operating departments. Each department had a production supervisor who worked one of three daily shifts.

{¶ 3} As production supervisors, appellees each supervised between ten and 30 employees. Their primary duty was to make sure that the hourly production workers were doing their work. In addition, they prepared performance appraisals, approved time off for employees, issued disciplinary write-ups, provided hiring recommendations, and determined when production operations should be halted for maintenance.

{¶ 4} As compensation for their work, appellees each earned a starting base "salary" of $32,000 per year. (Borda's base amount was later increased to $35,500.) The base amount was paid regardless of the number of hours worked. In addition to their weekly base payments, appellees also received extra compensation for working in excess of 40 hours per week. This additional compensation was calculated by converting the appellees' base amount to an hourly rate and paying the hourly rate times the number of overtime hours worked. During the relevant time period both plaintiffs worked approximately 500 overtime hours per year each, but they never worked less than 40 hours in one week. Thus, their compensation fluctuated weekly, depending on the number of hours worked.

{¶ 5} During the week between Christmas and New Year's Day, production at the plant was halted and hourly employees were generally on vacation. The production supervisors had three options during this period: (1) they could report to work and receive their regular salary, despite the fact that there were no hourly production workers to supervise, (2) they could take the time off as paid vacation, assuming that they had an entitlement, and receive their entire weekly salary, or (3) if they did not have any vacation entitlement, they could take the time off without pay.

{¶ 6} On March 2, 1999, appellees filed a complaint in the Erie County Common Pleas Court against appellant and three management officials, alleging (1) that they were not paid proper overtime compensation in the manner and method provided under the Federal Fair Labor Standards Act of 1938 ("FLSA"), in violation of R.C. 4111.03, (2) that they were paid a lesser wage than comparable male employees on account of their gender, in violation of R.C. 4112.02, and (3) that they were subjected to intentional infliction of emotional distress as a result of the violations of R.C. Chapters 4111 and 4112. At trial, the individual defendants and the emotional-distress claim were dismissed by plaintiffs.

{¶ 7} The gender-discrimination claim and the overtime claim were both presented in a single trial, but the overtime claim was tried to the court and the gender-discrimination claim was tried to the jury. At the conclusion of the October 1999 trial, the jury found in favor of appellees on the gender-discrimina-

tion claim, and the court found in favor of appellees on the overtime claim. Appellant timely filed a motion seeking findings of fact and conclusions of law. Nearly four years later, on February 6, 2004, the court issued a judgment entry that set forth the requested findings and conclusions and awarded liquidated, or double, damages to appellees.

{¶ 8} Appellant responded to the court's ruling by filing a motion for partial new trial as to damages or, alternatively, a motion to vacate award of damages, seeking to eliminate the doubling of damages. Appellant argued that the liquidated-damages award was improper because it was beyond the scope of the relief authorized under R.C. 4111.10(A). The court denied this motion in a judgment entry dated February 22, 2005. Appellant timely appealed this entry, raising the following assignments of error:

{¶ 9} I. "The trial court erred in finding that appellant did not sustain its burden of proof with respect to plaintiffs meeting the requirements for the statutory exemption from overtime compensation."

{¶ 10} II. "The trial court erred in awarding plaintiffs liquidated (double) damages with respect to overtime compensation."

{¶ 11} Appellant's first assignment of error essentially states that the determination concerning appellees' entitlement to overtime compensation is against the weight of the evidence. We are mindful, in this analysis, that judgments supported by some competent, credible evidence going to all essential elements of the case will not be reversed as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, syllabus. On the other hand, when the inquiry is purely a question of law, an appellate court need not defer to the judgment of the trial court. See *Wiltberger v. Davis* (1996), 110 Ohio App.3d 46, 51–52, 673 N.E.2d 628; see, also, *First Bank of Marietta v. Roslovic & Partners, Inc.*, 10th Dist. Nos. 03AP–332 and 03AP–333, 2004-Ohio-2717, 2004 WL 1172885, at ¶ 29.

{¶ 12} R.C. 4111.03(A) provides: "An employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's wage rate for hours worked in excess of forty hours in one workweek, in the manner and methods provided in and subject to the exemptions of section 7 * * * of the 'Fair Labor Standards Act of 1938,' 52 Stat. 1060, 29 U.S.C.A. 207, 213, as amended." In a similar manner, the FLSA's maximum-hours requirement provides that an employee must receive overtime pay at a rate of not less than one and one-half times the regular rate if the employee works more than 40 hours per week. Section 207(a)(1), Title 29, U.S.Code; see, also, *Jastremski v. Safeco Ins. Cos.* (N.D.Ohio 2003), 243 F.Supp.2d 743. Both the state and federal statutes exempt from their maximum-hours requirement "any employee employed in a bona fide

executive, administrative, or professional capacity * * * as such terms are defined and delimited from time to time by regulations of the Secretary [of Labor]." Section 213(a)(1), Title 29, U.S.Code.

{¶ 13} The employer has the burden of proving that an employee is exempt. *Douglas v. Argo–Tech Corp.* (C.A.6, 1997), 113 F.3d 67, 70. The exemption is "narrowly construed against the employers seeking to assert [it]," and its application is limited to those circumstances plainly and unmistakably within the exemption's terms and spirit. Id. The determination of how an employee spends his time is a question of fact, and the determination of whether his activities fall within an exemption is a question of law. *Schaefer v. Indiana Michigan Power Co.* (W.D.Mich.2002), 197 F.Supp.2d 935, 939.

{¶ 14} In the instant case, appellant argues that appellees qualified for the executive exemption. The regulations promulgated by the Secretary of Labor to implement the FLSA provide for both a "long test" and a "short test" for determining whether an employee falls within the executive exemption. *Jastremski*, 243 F.Supp.2d at 747. When the employee is compensated on a salary basis of more than $250 per week or more, the "short test" applies. Id. Appellees were paid more than $250 per week, and the parties agree that the short test will determine whether appellees were exempt executive employees.

{¶ 15} Under the short test, appellant must demonstrate (1) that appellees were compensated on a salary basis of not less than $250 per week and (2) that appellees' primary duties consisted of the management of the company or a customarily recognized department or subdivision thereof and included · the customary and regular direction of the work of two or more employees therein. See Section 541.119(a), Title 29, C.F.R.

{¶ 16} Appellant argues that appellees were paid on a salary basis, rather than, as the trial court found, on an hourly basis. Under the regulations, an employee is paid "on a salary basis" if "he regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of his compensation, which amount is not subject to reduction because of variations in the quality or quantity of work performed." Section 541.118(a), Title 29, C.F.R.; see, also, *Jastremski*, 243 F.Supp.2d at 748; *Johnson v. Ohio Dept. of Youth Servs.* (2002), 96 Ohio St.3d 161, 2002-Ohio-4010, 772 N.E.2d 1157, at ¶ 8.

{¶ 17} Compensation in addition to the salary does not, in and of itself, destroy the employee's otherwise valid salary status. See Section 541.118(b), Title 29, C.F.R.; see, also, *Brock v. Claridge Hotel & Casino* (C.A.3, 1988), 846 F.2d 180, 184; *Johnson*, supra, at ¶ 11. But when the employee's predetermined base pay is so far below his total compensation as to make the base pay's status as a salary merely an illusion, at least one court has found the salary test to have been

unsatisfied. See *Brock*, supra, at 187 (salary test not satisfied by compensation scheme in which (1) employees received a weekly minimum guaranteed "salary" of $250, (2) wages over the $250 minimum were paid by the hour, (3) the need to pay the "guaranteed" minimum rarely arose, (4) the employees regularly worked more than 40 hours in a week, and (5) the "additional" compensation varied in exact correlation with the number of hours worked); see, also, Wage and Hour Opinion Letters, April 1, 1999, BNA WHM 99:8232–8833 (citing *Brock*, supra, and stating that when facts of a particular case demonstrate that employees in reality have not been paid on a salary basis, courts have correctly found that salary test to have been unmet).

■ {¶ 18} In order to be upheld as a salary, a guaranteed minimum compensation amount must bear a reasonable relationship to the employee's actual weekly compensation calculated on an hourly basis. See *Wright v. Aargo Security Servs., Inc.* (S.D.N.Y.2001), No. 99 CIV.9115(CSH), 2001 WL 1035139, citing Wage & Hour Opinion Letters, July 26, 1996, BNA WHM 99:8058–8059; see, also, *Hood v. Mercy Healthcare Arizona* (D.Ariz.1997), 23 F.Supp.2d 1125 (although itself refusing to apply reasonable-relationship test, court recognizes and cites a January 22, 1988 DOL opinion letter that utilizes it). The reasonable relationship requirement is satisfied if the weekly guarantee is roughly equivalent to the employee's total earnings at the hourly rate for his normal work week. See id.

■ {¶ 19} In the instant case, appellees each worked 2,080 hours of straight time and approximately 500 additional hours of overtime in any given year during the relevant time period. With appellees' weekly earnings amounting to only about 80 percent of their total earnings at the hourly rate for a normal work week, we find that the reasonable-relationship requirement is not satisfied in this case. In fact, when considering the totality of the circumstances in this case, appellant's characterization of appellees' base pay as a "salary" appears to have been nothing more than an improper attempt to circumvent the federal and state overtime requirements. Recall that appellees never worked less than a 40–hour week. As a result, appellees' wages directly correlated to the number of hours they worked. In addition, appellant never had to pay appellees their "guaranteed" minimum.

{¶ 20} As further evidence that appellees' status was more consistent with hourly, rather than salary, work, we look to appellant's treatment of appellees during the Christmas shutdown. At that time—the one time during the year when production was halted and appellees should have been able to take advantage of their guaranteed minimum "salary"—appellees were forced to choose between going to work, with little or nothing to do; taking the time off as paid vacation; or taking the time off without pay.

{¶ 21} Finally, we note the manner in which similarly situated employees were paid both prior to and after the relevant time period in this case. Before appellant took over the Sandusky plant, the plant was owned by Chrysler. Appellee Borda worked for Chrysler in a position identical to her position with appellant and received overtime at a rate of one and one-half times her hourly rate. After the relevant time period, the appellant company underwent a reorganization, which resulted in the position of production supervisor being replaced with the position of team leader. The team leaders, who did the work that was previously done by production supervisors, were made hourly employees and were paid overtime at a rate of one and one half-times their hourly rate. Thus, it was only during a circumscribed and isolated period that workers doing the same work that appellees did were classified as salary workers.

{¶ 22} The trial court's determination that appellant paid appellees on an hourly basis is amply supported both by competent, credible evidence and by law. As a result, appellees were not bona fide executives entitled to exemption from the overtime provisions set forth in the Ohio and federal statutes. Accordingly, we conclude that appellant violated both state and federal law when it failed to pay appellees overtime at a rate of not less than one and one-half times their regular rate. Appellant's first assignment of error is therefore found not well taken.

{¶ 23} Next we turn to appellant's second assignment of error, wherein appellant claims that the trial court erred in awarding appellees liquidated (double) damages pursuant to Section 216(b), Title 29, U.S.Code. Appellant argues that the award was improper because appellees did not present a claim under federal law, but rather under Ohio law, which does not permit an award of liquidated damages. See R.C. 4111.10 (providing that an employee affected by violation of R.C. 4111.03 is entitled to the full amount of the wage rate, less any amount actually paid to the employee by the employer, and for costs and reasonable attorney fees as may be allowed by the court). Liquidated damages can only be awarded for a violation of the FLSA. See Section 216(b), Title 29, U.S.Code (providing that an employer who violates the provisions of Section 206 or Section 207 of that title shall be liable to the affected employee in the amount of his unpaid overtime compensation and in an additional equal amount as liquidated damages).

{¶ 24} Review of the record reveals numerous inconsistencies regarding how and when the federal claim, with its attendant request for liquidated damages, was brought before the court. Appellees allege that the claim was first raised in their complaint, at paragraph 7, in the form of a wage-and-hour claim. Paragraph 7 of the complaint provides: "Plaintiffs state that the failure of Sandusky Limited, their employer, to pay them for overtime at a wage rate of one and one-

half times the employee wage rate for hours worked in excess of forty hours in one work week, in the manner and method provided under the Federal Fair Labor Standards Act of 1938, violated the overtime provision of Ohio law as set forth in Ohio Revised Code § 4111.03."

{¶ 25} The next time the matter was raised was just prior to trial, in a proposed jury instruction submitted by *appellant*. The proposed jury instruction provided as follows: *"If you determine that the Plaintiffs are entitled to overtime compensation under Ohio law, then you may award the Plaintiffs 'liquidated damages.' This is an amount of damages equal to the amount that you determine Plaintiffs are owed in overtime compensation.* Even if you determine Plaintiffs are entitled to overtime compensation, if you find that Defendants Sandusky Limited and Kevin Givens demonstrated that their actions were taken in good faith and that they had reasonable grounds for believing that their actions were not a violation of the Ohio law regarding the payment of overtime compensation, then you may not award liquidated damages to the Plaintiffs. 29 U.S.C. § 216(b). 29 U.S.C. § 260." (Emphasis added.)

{¶ 26} On November 5, 1999, appellees filed a posttrial brief in which they specifically requested liquidated damages. Appellant's only objection to this request made prior to the trial court's February 6, 2004 judgment entry appears in a footnote contained in appellant's posttrial reply brief, filed on November 15, 1999. Although the objection does state that liquidated damages should not be awarded, the reason given is not that they had not been properly pleaded, but rather that appellant, in compensating employees, had acted in good faith.

{¶ 27} After the trial court issued its February 6, 2004 judgment entry, appellees filed a motion to amend the complaint to conform to the evidence and issues decided by the court. Specifically, appellees sought to include in their complaint a claim for liquidated damages under the FLSA. Nearly a year later, the trial court—without ever mentioning appellees' motion to amend—summarily denied appellant's motion for a new trial. We must now determine whether this denial was proper.

{¶ 28} In analyzing this issue, we look to the court's decision in *Gammon v. Hinkle*, 6th Dist. No. L–03–1210, 2004-Ohio-473, 2004 WL 226098 wherein it was stated: " '[W]ith the adoption of the Civil Rules, Ohio has progressed from "fact pleading" to "notice pleading." ' *Hensley v. Toledo Area Regional Transit Auth.* (1997), 121 Ohio App.3d 603, 615, 700 N.E.2d 641 citing *Salamon v. Taft Broadcasting Co.* (1984), 16 Ohio App.3d 336, 338 [16 OBR 385], 475 N.E.2d 1292. Civ.R. 8(A) sets forth the requirements for pleading a claim for relief and provides in pertinent part: 'A pleading that sets forth a claim for relief, whether an original claim, counterclaim, cross-claim, or third-party claim, shall contain (1) a short and plain statement of the claim showing that the party is entitled to

relief, and (2) a demand for judgment for the relief to which the party claims to be entitled.' A complaint therefore 'must contain either direct allegations on every material point necessary to sustain a recovery on any legal theory, even though it may not be the theory suggested or intended by the pleader, or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial.' *Fancher v. Fancher* (1982), 8 Ohio App.3d 79, 83 [8 OBR 111], 455 N.E.2d 1344, quoting 5 Wright & Miller, Federal Practice & Procedure: Civil (1969), at 120–123, Section 1216.

{¶ 29} "A party is not required to plead the legal theory of recovery or the consequences which naturally flow by operation of law from the legal relationships of the parties. *Illinois Controls, Inc. v. Langham* (1994), 70 Ohio St.3d 512, 526, 639 N.E.2d 771. 'The rules make clear that a pleader is not bound by any particular theory of a claim but that the facts of the claim as developed by the proof established the right to relief.' Id. citing McCormac, Ohio Civil Rules Practice (2 Ed.1992) 102, Section 5.01."

{¶ 30} Although the claim contained in appellees' complaint at paragraph seven seems primarily to invoke R.C. 4111.03, it at least implies a federal violation by alleging that appellant failed to pay overtime pursuant to the FLSA. That appellant understood the complaint to contain a federal claim is evidenced by appellant's own proposed jury instruction on liquidated damages. In submitting that jury instruction, appellant demonstrated that it had, at a minimum, some rudimentary expectation or awareness that liquidated damages might be awarded in connection with appellees' claim for overtime compensation. For the foregoing reasons, we find no error in the trial court's award of damages or in its denial of appellant's motion for a new trial. Accordingly, appellant's second assignment of error is found not well taken.

{¶ 31} The judgment of the Erie County Court of Common Pleas is affirmed.

Judgment affirmed.

SINGER, P.J., and PARISH, J., concur.